UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STERLING EQUIPMENT, INC. | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | C.A. No._____ |
| v. | ) | |
| | ) | |
| WENDY GIBSON and | ) | |
| JOHN DOE NOS. 1-20 | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## COMPLAINT

Sterling Equipment, Inc., by its attorneys, Pierce Atwood, LLP, as and for its Complaint against Defendants Wendy Gibson and her undisclosed co-conspirators John Doe Nos. 1-20 (collectively, the "Defendants") hereby alleges as follows:

### PARTIES

1.      Sterling Equipment, Inc. ("SEI") is a Massachusetts Corporation with offices in Quincy, Massachusetts.

2.      Wendy Gibson ("Gibson") is a former employee of SEI and presently resides at 12337 Homeport Drive, Maurepas, Louisiana.

3.      Defendants John Doe Nos. 1-20 are Gibson's undisclosed and unidentified co-conspirators.  As a result of its investigation, Plaintiff believes that it is likely that there is one or more other undisclosed and un-identified co-conspirator(s).  Plaintiff will amend this Complaint to allege any undisclosed and un-identified co-conspirator(s) to allege true identities as and when determined.

## JURISDICTION AND VENUE

4.     Jurisdiction is properly places in this court pursuant to 28 U.S.C. § 1332 because amount in controversy exceeds $75,000, exclusive of interest and costs and there is diversity of citizenship between SEI and Defendants.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and/or omissions giving rise to the claims asserted herein occurred in this judicial district and Defendants are subject to personal jurisdiction in this Judicial District.

## FACTS

6.     Beginning in January 24, 2011, Gibson was employed by SEI at its headquarters in Quincy, Massachusetts in SEI's accounting department eventually reaching the position of controller.

7.     In February of 2014, Gibson requested that SEI permit her to move her place of employment to Florida purportedly in order to permit her to be near her family.

8.     SEI agreed to Gibson's request and established a small office in Florida from which Gibson could perform her accounting duties.  SEI also hired two employees in Florida, Natasha Maragh ("Maragh") and Deanna Trott ("Trott") to assist Gibson.

9.     Among Gibson's responsibilities was to pay SEI's current invoices from its various vendors.  In order to perform this function of her job, Gibson was provided with a laptop computer by which she could access a password protected portal into SEI's bank account at a bank in Massachusetts in order to enter wire transfer instructions, according to which instructions, funds from SEI's bank account in Massachusetts were released.

10.     In order to release wire transfers from SEI's bank's wire transfer portal, Gibson needed to enter a wire transfer PIN code.  Gibson could generate a wire transfer PIN code by

entering another passcode into a small device which would generate a wire transfer PIN code which would be usable for only fifteen seconds (the "PIN Fob").

11.     Gibson was one of only five employees at SEI to be assigned authority to release wire transfers and, therefore, was one of only five employees with a PIN Fob.

12.     Gibson brought her PIN Fob with her to perform her duties for SEI from her dedicated offices in Florida.

### THE FRAUDULENT WIRE TRANSFER

13.     On August 22, 2014, a wire transfer for one hundred and ninety eight thousand dollars ($198,000) was issued from SEI's bank account in Massachusetts purportedly to a Unique Holdings Corp. in payment of a purported Invoice No. 209 (the "Fraudulent Wire Transfer").  However, in truth, there was no Invoice No. 209 from a Unique Holdings Corp. and the entire transfer was a fraud committed to misappropriate SEI's Funds.

14.     Gibson claimed that she first learned of the Fraudulent Wire Transfer when she received an email confirmation of the Fraudulent Wire Transfer at the same time that she received an email confirmation for a legitimate wire transfer that she had just released.

15.     Gibson contacted Andrew Goldberg ("Goldberg"), SEI's Chief Financial Officer, in Massachusetts and reported the Fraudulent Wire Transfer.  During her conversation with Goldberg, Gibson claimed that she had been locked out of SEI's wire transfer portal with SEI's bank in Massachusetts and could not use the wire transfer portal.

16.     Goldberg contacted SEI's bank in an effort to put a stop on the Fraudulent Wire Transfer and, although the bank initially indicated that it could stop the wire transfer, in fact it was unable to.

17.     The Fraudulent Wire Transfer was sent to an account at Norvik Banka in Latvia. The account was held in the name "Specimen Andrew." An individual removed approximately eight thousand Euros from the account and then transferred the remaining one hundred and seventy thousand Euros to a further account in Belgium.

## GIBSON'S LAPTOP

18.     Gibson was asked to and, within a few days, eventually did surrender the laptop which SEI had provided her to perform her duties for SEI in Florida.

19.     The laptop was examined and no virus, key-stroke logger or other malware was found to be present on the laptop.

20.     A data remnant regarding the Fraudulent Wire Transfer was discovered on Gibson's laptop but only within the portions of the hard drive which stored the emergency recovery back-up copy of data on the laptop. This data, however, was found nowhere else on the laptop. Upon information and belief, the hard drive location of this data remnant and the fact that only one copy of the remnant was discovered indicates that an effort was made to remove evidence concerning the Fraudulent Wire Transfer from Gibson's laptop.

21.     Gibson does not deny that the Fraudulent Wire Transfer was released via her password protected entry onto the wire transfer portal with a PIN generated by her PIN Fob. However, Gibson claims that she did not enter the instructions for the Fraudulent Wire Transfer and did not observe that the instructions had been entered into the portal when she entered her PIN generated by her PIN Fob to release one legitimate wire transfer.

22.     Although Gibson failed to report it investigators, minutes before announcing that she had discovered the Fraudulent Wire Transfer, Gibson was observed by Trott receiving a

phone call from outside the Florida office during which Trott observed Gibson read a PIN generated by her PIN Fob to the undisclosed individual on the phone call.

23.     When confronted by Trott about this call, Gibson claimed it was a call from SEI's bank inquiring as to two wire transfers for two different SEI affiliated activities.  Gibson did not assert, at this time to Trott, that there was anything suspicion about the call purportedly from SEI's bank or about the two wire transfers that SEI's bank was purportedly inquiring about.

24.     Upon information and belief, Gibson's telephone conversation was not with SEI's bank, but was with one or more of Gibson's undisclosed co-conspirators in order to commit the Fraudulent Wire Transfer.

25.     Gibson's claim that she did not observe the wire instructions for the Fraudulent Wire Transfer and that it was released at the same time as a legitimate wire transfer are neither credible nor supported by the data released from Gibson's laptop.

- The wire transfer portal plainly displays all entered wire transfers in a single screen and, therefore, it is not credible to claim that Gibson could possibly not observe the instructions for the Fraudulent Wire Transfer; and

- no other legitimate wire transfer was released at the exact same time as the Fraudulent Wire Transfer.

26.     Upon further information and belief, Gibson and/or one or more persons already in contact with Gibson acted with the wire transfer portal password and PIN Fob entrusted to Gibson to misappropriate the funds, transferred by the Fraudulent Wire Transfer.

27.     In the alternative: upon further information and belief, Gibson negligently provided or permitted a third party to have access to her passwords and PIN Fob and those undisclosed third parties used Gibson's password and PIN Fob to misappropriate the funds

transferred by the Fraudulent Wire Transfer. Gibson, thereafter, failed to disclose her negligent acts and acted affirmatively to deny, falsely, her actions and knowledge pertaining to the Fraudulent Wire Transfer, and to destroy data which would have permitted SEI to discover the true circumstances giving rise to the Fraudulent Wire Transfer or to have made the recovery of the Fraudulent Wire Transfer possible.

28.     In the fall of 2014, SEI closed its offices in Florida and Gibson moved back to Massachusetts to continue working for SEI at its offices in Quincy, Massachusetts.

29.     In or about October, 2015, Gibson was laid-off from her position with SEI in Quincy, Massachusetts. Upon information and belief, Gibson then moved her permanent residence to Louisiana, where she still resides.

## COUNT I
## (Conversion)

30.     SEI repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 29 above.

31.     SEI has had, at all relevant times, an ownership and/or possessory interest in the $198,000 (the "Funds") transferred from SEI's bank account via the Fraudulent Wire Transfer.

32.     Gibson and Gibson's undisclosed co-conspirators, John Doe Nos. 1-20, have intentionally and wrongfully exercised control and/or dominion over the Funds via the Fraudulent Wire Transfer.

33.     Gibson and Gibson's undisclosed co-conspirators, John Doe Nos. 1-20, did not legitimately acquire possession of the Funds under a good faith claim of right.

34.     SEI has suffered, and continues to suffer damages as a direct and proximate result of Gibson and Gibson's co-conspirators, John Doe Nos. 1-20, unlawful actions in an amount to be determined at trial, but not less than $198,000.

## COUNT II
### (Aiding and Abetting Conversion)

35.     SEI repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 34 above.

36.     By their actions, including via the Fraudulent Wire Transfer, described herein, Gibson and her undisclosed co-conspirators, John Doe Nos. 1-20, converted SEI's Funds.

37.     Each of Gibson and her undisclosed co-conspirators, John Doe Nos. 1-20, intended to bring about such conversion.

38.     As described herein, each individual defendant acted in furtherance of the conversion, with knowledge of the role he or she was playing in the conversion.

39.     SEI has suffered, and continues to suffer, damages as a direct and proximate result of the individual defendant's unlawful actions in an amount to be determined at trial, but not less than $198,000.

## COUNT III
### (Breach of Fiduciary Duty and Breach of the Duty of Loyalty Against Gibson)

40.     SEI repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 39 above.

41.     As described more fully above, Gibson was an employee and, indeed, a member of management, of SEI who sought and received from SEI a position of trust, confidence and influence to act on behalf of SEI and to advise SEI in its accounting, cash management and its day to day financial activities.  Therefore, Gibson owed SEI fiduciary duties, owed SEI a duty of loyalty and owed SEI a duty of care.

42.     As described more fully above, Gibson breached her fiduciary duties, her duty of loyalty to SEI and duty of care to SEI, by among other things: converting SEI's funds via the

Fraudulent Wire Transfer and, upon information and belief, acting both directly and in concert with her co-conspirators, to conceal and destroy evidence of the Fraudulent Wire Transfer and to impede SEI's efforts to recover the Fraudulent Wire Transfer.

43.     In the alternative, Gibson breached her fiduciary duties, her duty of loyalty to SEI and duty of care to SEI, by among other things: negligently providing or permitting a third party to have access to her passwords, PIN and/or PIN Fob thereby permitting those undisclosed third parties used Gibson's password and PIN Fob to misappropriate the funds transferred by the Fraudulent Wire Transfer.  Gibson, thereafter, failed to disclose her acts and acted affirmatively to deny, falsely, her actions and knowledge pertaining to the Fraudulent Wire Transfer, and to destroy data which would have permitted SEI to discover the true circumstances giving rise to the Fraudulent Wire Transfer or to have made the recovery of the Fraudulent Wire Transfer possible.

44.     SEI is entitled to receive back from Gibson all compensation paid either directly or indirectly, by SEI to Gibson from the date of the breach of her fiduciary duties and/or breach of her duty of loyalty.

45.     As a direct and proximate result of Gibson's unlawful actions, which are described more fully above, SEI has suffered and continues to suffer damages in an amount to be determined at trial, but not less than $198,000.

## COUNT IV
### (Aiding and Abetting Breach of Fiduciary Duties and Duty of Loyalty Against John Doe Nos. 1-20)

46.     SEI repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 45 above.

47.     As described more fully above, Gibson was an employee and, indeed, a member of management, of SEI who sought and received from SEI a position of trust, confidence and influence to act on behalf of SEI and to advise SEI in its accounting, cash management and its day to day financial activities.  Therefore, Gibson owed SEI fiduciary duties and owed SEI a duty of loyalty.

48.     As described more fully above, Gibson breached her fiduciary duties and her duty of loyalty to SEI, by among other things: converting SEI's funds via the Fraudulent Wire Transfer and, upon information and belief, acting both directly and in concert with her co-conspirators, to conceal and destroy evidence of the Fraudulent Wire Transfer and to hinder SEI's efforts to recover the Fraudulent Wire Transfer.

49.     Upon information and belief, Gibson's undisclosed co-conspirators, John Doe Nos. 1-20, knew or had knowledge of such facts that the undisclosed co-conspirators could not reasonably be held to have acted in good faith in not knowing that Gibson was an employee and, indeed, a member of management, of SEI who owed fiduciary duties and a duty of loyalty to SEI such that Gibson's actions with and on behalf of SEI the undisclosed co-conspirators would be in breach of Gibson's fiduciary duties and a duty of loyalty to SEI.

50.     As a direct and proximate result of Gibson's undisclosed co-conspirators, John Doe Nos. 1-20, aiding and abetting Gibson's breach of her fiduciary duties and a breach of her

duty of loyalty to SEI, SEI has suffered and continues to suffer damages in an amount to be determined at trial but not less than $198,000.

## COUNT V
### (Fraud)

51.     SEI repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 50 above.

52.     As described above, Gibson fraudulently converted SEI's funds by fraudulently entering false wire transfer instructions or by facilitating her undisclosed co-conspirators in entering false wire transfer instructions into SEI's wire transfer portal in order to convert and misappropriate SEI's funds under false pretenses.

53.     As described above, upon information and belief, Gibson made false and misleading statement and failed to disclose key facts to Goldberg and/or SEI's agents in order to fraudulently conceal Gibson's role in the Fraudulent Wire Transfer.

54.     As described above, upon information and belief, Gibson deleted data from the laptop provided to her by SEI to perform her duties for SEI in order to fraudulently conceal evidence relating to the Fraudulent Wire Transfer and Gibson's role in conducting the Fraudulent Wire Transfer.

55.     As a direct and proximate result of Gibson's actions, SEI has been damaged in an amount to be determined at trial but no less than $198,000.

## PRAYERS FOR RELIEF

WHEREFORE, SEI respectfully requests that the court grant the following relief:

1.    That the court enter judgement against defendants on all counts of the complaint;

2.    That the court award SEI its actual damages including punitive damages, as appropriate, in an amount to be determined at trial;

3.    That the court award SEI its attorneys' fees and costs; and

4.    That the court grant such further and additional relief as the court deems just and proper.

## JURY DEMAND
SEI demands a trial by jury on all issues so triable.

Respectfully submitted,

**STERLING EQUIPMENT, INC.**

By its counsel,

Jeffrey E. Francis (BBO #639944)
*jfrancis@pierceatwood.com*
Pierce Atwood LLP
100 Summer Street, Suite #2250
Boston, Massachusetts  02110

Dated:  August 4, 2016